**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| JOHNNY LEE WESLEY, JR. #42421-083 | : |
| Plaintiff | : CIVIL ACTION NO. AW-06-2930 |
| v. | : |
| HARLEY G. LAPPIN, Director<br>Bureau of Prisons<br>    and<br>K.M. WHITE, Director<br>Mid-Atlantic Region<br>    and<br>RICHARD W. SCHOTT<br>Regional Counsel | :<br><br>:<br><br>:<br><br>:<br><br>: |
| Defendants | |
| | : |

..oOo..

**MEMORANDUM**

Pending is a pro se Complaint filed by Johnny Lee Wesley ("Wesley"), a federal prisoner incarcerated at FCI- Cumberland, Maryland, alleging violations of his equal protection and due process rights, and seeking injunctive relief and damages. The Court has construed the Complaint pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403, U.S. 388 (1971) with jurisdiction vested pursuant to 28 U.S.C. § 1331. Defendants, by their counsel, have moved to dismiss the Complaint or in the grant alternative for summary judgment. Wesley has filed an opposition response to which Defendants' counsel has replied. No hearing is necessary. *See* Local Rule 105.6 (D.Md.). For the reasons set forth below, the Court will grant Defendants' Motion to Dismiss.

**I. Claims Presented**

Wesley asserts that he was "threatened with physical harm and sanctions" if he refused to

consent to payment of court-ordered fines and restitution through the Inmate Financial Responsibility Program (IFRP) administered by the Bureau of Prisons (BOP). Complaint at 4.  He seeks to enjoin  payment of fines through the IFRP and a court order to reimburse him for amounts already paid. In addition, Wesley claims he was threatened with loss of commissary privileges, and later transferred  from a two-inmate to a three-inmate cell when he refused to sign the IFRP contract in September of 2004.

Defendants argue that Wesley has yet to exhaust his administrative remedies. Defendants further posit that because the IFRP is a voluntary program to help inmates meet their financial responsibilities and the benefits of the IFPR are not constitutionally guaranteed,  Wesley has no cognizable claim.[1]

## II.  Background

### A.  Court-Ordered Payment of Fines and Restitution

Wesley was convicted of one count of conspiracy to possess and distribute crack cocaine, cocaine, and marijuana in violation of 21 U.S.C. § 846; one count of murder in furtherance of drug trafficking in violation of 21 U.S.C. §848(e)(1)(A) and 18 U.S.C. § 2; and one count of interstate transportation in aid of racketeering and adding and abetting, in violation of 18 U.S.C. § 1952 and 18 U.S.C. §2 in the United States District Court for the Eastern District of Virginia. *See United States v. Russell, et al.*  Criminal Action No. 97-382 (E.D. Va.); *see also* Defendants' Ex. 1, Sankey Decl., Attach A. On May 8, 1998, the court sentenced Wesley to a term of life for each count running concurrently. *See id.*

Wesley was ordered to pay a $100.00 felony assessment on each count and restitution to the

---

[1]Defendants argue that the Complaint fails to meet the standards set forth in *Bivens*, and Wesley fails to allege sufficient personal involvement by Defendants.  The Court need not reach these arguments for reasons apparent herein.

three children of his victim in the amount of $100,000. The Eastern District of Virginia also ordered deducting the maximum amount from Wesley's prison account that during incarceration. Further, the court ordered all financial penalty payments made to the Clerk of the Court, except those made through the IFRP. *See id.*

### B. Wesley's Payment Pursuant to Inmate Financial Plans

On October 31, 2000, Wesley signed an Inmate Financial Plan agreeing to participate in the IFRP by paying $25.00 quarterly beginning in March of 2001 toward the restitution ordered as part of his sentence. Defendants' Ex. 2, Holler Decl. Attach. A. On September 17, 2004, Wesley signed an Inmate Financial Plan agreeing to pay $75.00 monthly toward restitution. Defendants' Ex. 2, Holler Decl. Attach. B. In accordance with the later agreement, $75.00 each month was deducted from Wesley's prison account from October of 2004, through August of 2005. Defendants' Ex. 2 Holler Decl., Attachs C & D.

On August 19, 2005, Wesley signed an Inmate Financial plan agreeing to pay $100.00 each month through the IFPR, beginning in September of 2005. Defendants' Ex. 2 Holler Decl., Attach E. Pursuant to this agreement, $100.00 was deducted from his account in September of 2005, but no further deductions were made. Defendants' Ex. 2 Holler Decl., Attachs C & D

On December 16, 2005, Wesley signed an Inmate Financial Plan agreeing to participate in the IFRP paying $100.00 monthly starting in January of 2006. Defendants' Ex. 2 Holler Decl., Attach F. In January of 2006, $100.00 was deducted from Wesley's account, but no other deductions were made under this plan. Defendants' Ex. 2 Holler Decl., Attachs C & D.

### C. Wesley's Efforts to Stop Deductions

On December 21, 2005, Wesley filed an Inmate Request to Staff to stop deductions through the IFRP, but requested that his privileges for participating in the IFRP continue. Defendants' Ex.

2 Holler Decl., Attach G.  On December 28, 2005, Warden Hollingsworth responded to the Inmate Request to Staff explaining to Wesley that he is obligated to pay the remainder of his restitution during incarceration and under the conditions set forth in the IFRP, stating "Failure to do so will result in you being placed in IFRP Refuse status, along with all the consequences of that status." Defendants' Ex. 2 Holler Decl., Attach H.

On January 27, 2006, Warden Hollingsworth wrote a letter to the sentencing judge in Wesley's criminal case, the Honorable Henry Coke Morgan, Jr., Senior United States District Judge, United States District Court for the Eastern District of Virginia, explaining that the BOP understood the court's order to mean that all payments were due in full immediately and could be paid through the IFRP.  Defendants' Ex. 2 Holler Decl., Attach I.  Warden Hollingworth's letter stated that the BOP would continue to collect restitution form Wesley's account under the IFRP unless the Judge Morgan directed otherwise. *See id.*   On October 18, 2006, the BOP was advised that it was properly implementing the court's order.[2]  Defendants' Ex. 2 Holler Decl., Attach. J.

Wesley signed another Inmate Financial Plan on November 1, 2006, agreeing to pay $100.00 toward restitution through the IFRP.  Defendants' Ex. 2 Holler Decl., Attachs. K &L.  Pursuant to the November of 2006, agreement, $100.00 was deducted from Wesley's account on January 8, 2007.  Defendants' Ex. 2 Holler Decl., Attachs C & D.

---

[2]The letter, written by Judge Morgan's law clerk states in part:

> Your understanding of the Court's order is correct.  The Court's order directs you to deduct the maximum amount which may be deducted from Mr. Wesley's prison account each moth while Mr. Wesley is incarcerated.  The order also directs that the amount deducted shall go toward the payment of Mr. Wesley's restitution.  Your proper implementation of the Court's order is not an impermissible exercise of authority under United States v. Miller, 77 F.3d 71 (4th Cir. 1996).

Defendants' Ex. 2 Holler Decl., Attach J.

On November 2, 2006, Wesley submitted an Inmate Request to Staff stating that he should not make payments toward his court-ordered financial obligations through the IFRP and that his privileges should continue despite his refusal to participate in the program. Defendants' Ex. 2 Holler Decl., Attach M.[3]

On November 8, 2006, Warden Hollingsworth responded by reiterating that Wesley was obligated to pay restitution during incarceration. *See id.* The Warden's response referenced the letter received from Judge Morgan's chambers which stated that the BOP was properly implementing the court order. *See* Defendants' Ex. 2 Holler Decl., Attach N.

Wesley is participating in the IFRP and is on FRP Status: Participating. Defendants' Ex. 2 Holler Decl., Attachs. D & L. He has completed paid the $300.00 of felon assessments order by the sentencing court, and has a balance of $98, 440.00 remaining on the $100,000 of restitution ordered. *See id.* Currently, he is employed as a unit orderly. *See id.*

**III. Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. In considering such a motion, the Court should accept as true all well-pleaded allegations and view the complaint in the light most favorable to Plaintiff. *See, e.g., De Sole v. U.S.,* 947 F.2d 1169, 1171 (4th Cir.1991) (citing *Jenkins v. McKeithen,* 395 U.S. 411, 421 (1969)). In order to grant a motion to dismiss, it must appear certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Edwards v. City of Goldsboro,* 178 F.3d 231, 243-44 (4th Cir.1999). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v.*

---

[3]Wesley somewhat dramatically refers to the loss of incentives as "repercussions," sanctions, disciplinary action and retaliation. Defendants' Ex. 2 Holler Decl., Attach. M.

5

*Rhodes,* 416 U.S. 232, 236 (1974).

When a 12(b)(6) motion deals with a civil rights complaint, the court should not dismiss the claim unless it appears certain that a plaintiff is not entitled to relief under any legal theory which might plausibly be suggested by the facts alleged. *See Harrison v. U.S. Postal Serv.,* 840 F.2d 1149, 1152 (4th Cir.1988). However, the court need not accept as true the legal conclusions set forth in a plaintiff's complaint. *See Edwards,* 178 F.3d at 244. Furthermore, mere legal conclusions couched as factual allegations need not be accepted as true. *See Assa'Ad-Faltas v. Virginia,* 738 F.Supp. 982, 985 (E.D.Va.1989) (citing *Papasan v. Allain* 478 U.S. 265, 286 (1986)).

## IV.  Exhaustion

The Prison Litigation Reform Act (PLRA), 42 U.S.C. 1997e (a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions under 42 U.S.C. §1983  "or any other Federal law," though the administrative process may not afford them the relief they might obtain through civil proceedings. *See Booth v. Churner*, 532 U.S. 731 (2001). The purpose of the exhaustion requirement of the PLRA is to provide "time and opportunity to address complaints internally before allowing the initiation of a federal case.  In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Porter v. Nussle*, 534 U.S. , 516, 525 (2002); *see also Woodford v. Ngo*, 2006 WL 1698937 (June 22, 2006) (exhaustion of administrative remedies is mandatory and must be proper). The PLRA exhaustion requirement applies with equal force to *Bivens* actions.  *See Yousef v. Reno*, 254 F3d 1214, 1218 (10th Cir. 2001); *Nyhuis v. Reno*, 204 F.3d 65, 68-69 (3rd Cir. 2000).  Failure to exhaust is an affirmative defense rather than a pleading requirement.  *See Jones v. Bock*, _U.S._, 127 S. Ct. 910, 921 (January 22, 2007).  A district court cannot dismiss the complaint without first giving the inmate an opportunity to address the issue. *See*

*Anderson v. XYZ Corr. Health Serv.*, 407 F.3d 674, 682 (4th Cir. 2005).

The BOP has established the Administrative Remedy program for inmates to request review of concerns related to their confinement. *See* 28 C.F.R. *et seq*. The inmate must first submit his "issue of concern informally" to staff. *See* 28 C.F.R. § 542.13. If an inmate is unable to resolve the concerns informally, he may file a formal written complaint on the proper form at the institution level within twenty calendar days of the date of the occurrence on which the complaint is predicated. *See* 28 C.F.R. § 542.14(a). The inmate may appeal that decision to the Regional Director. *See* 28 C.F.R. § 542.15(a). The Regional Director's decision may be appealed to the Office of General Counsel, Washington, D.C. *See id.* "An inmate has not fully exhausted his administrative remedies until he has appealed through all three levels." *Irwin v. Hawk*, 40 F. 3d 347, 349 n. 2 (11th Cir. 1994); *cert. denied,* 516 U.S. 835 (1995).

**V.  Discussion**

In this case, Wesley has yet to exhaust his administrative remedies to challenge his payments through the IFRP. *See* Defendants' Ex. 1, Sankey Decl. Attachs., D-F. Plaintiff has not appealed the Warden's responses to the Regional Director and General Counsel levels. *See id.* Proper exhaustion will permit full articulation of Wesley's complaints and allow the BOP to appropriately and fully respond.

Wesley does not to adequately respond to Defendants' review of his administrative remedy history, which shows that he failed consistently failed to seek review of his claims beyond the institutional level. Wesley summarily states in his reply that Defendants' refused to give him the appropriate forms to pursue administrative remedies. Plaintiff's Reply, p. 2. The allegation is devoid of any detail as to how, when, or by whom he was prevented from seeking redress through

the BOP.[4]

Even if this matter were to proceed, Wesley fails to state a cognizable claim as his claim is erroneously predicated on the assumption that inmates have a constitutional right to enjoy incentives for IFRP participation. The IFRP "is a voluntary program that was created to help inmates meet their financial responsibilities and the benefits of the IFRP are not constitutionally guaranteed." *United States v. Warmus*, 151 Fed Appx. 783, 787 (11th Cir. 21005) (unpublished); *see also Durham v. Hood*, 140 Fed Appx. 783., 785 (10th Cir. 2005) (stating that while an inmate is free to decline participation in the IFRP, the refusal is not without consequences because the benefits that can be denied are not constitutionally guaranteed). The IFRP has been uniformly upheld against due process challenges. *See Weinberger v. United States*, 268 F.3d 346, 360 (6th Cir. 2001); *Johnpoll v. Thornburgh*, 898 F.2d 849, 851 (2nd Cir.1990) *Dorman v. Thornburgh*, 955 F2d 57, 58-59 (D.C.Cir. 1992).

In regard to Wesley's allegation that he was threatened with physical harm if he refused to participate in the IFRP, Defendants refute this claim by verified pleadings. Defendants' Ex. 2, Holler Decl., ¶ 5; *see also* Ex. 1, Sankey Decl.¶ 5 . Wesley does not specify any threats of physical harm, but instead views the "threat" in terms of loss of incentives for refusing to participate. Wesley does not provide the name of the corrections officials who threatened him, the specific statements allegedly made to him, or why he claims to be "irreparably injured" by Defendants'

---

[4]Contrary to Wesley's assertions, *United States v. Miller*, 77 F.3d 71 (4th Cir. 1995), did not declare payments through the IFRP illegal. In *Miller*, the United States Court of Appeals for the Fourth Circuit stated that a district court may not delegate its authority to set the amount and timing of fines or restitution to the BOP. *See Miller*, 77 F.3d at 77-78. The appellate court further indicated that a court may, while retaining ultimate responsibility for setting the timing and amount of payments, enlist the assistance of other entities to effect collection. *See id.* If Wesley intends to challenge the legality of his criminal sentence, he may do so by filing a 28 U.S.C. §2255 Motion to Vacate, Set Aside or Correct Sentence.

conduct. Complaint 4-9; Plaintiff's Opposition. [5]

To the extent Wesley intends to assert a cause of action for retaliation for refusing to participate in the IFRP, his claim is also unavailing. A retaliation claim "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Since Wesley does not have a constitutional right to enjoy IFRP incentives, there was no cause of action for retaliation when his privileges were withdrawn for refusing to participate in the program.

**VI. Conclusion**

For the these reasons, the Court will grant Defendants' motion to dismiss. A separate Order follows.

Date: April 25, 2007                              /s/
                                        Alexander Williams, Jr.
                                        United States District Judge

---

[5] Wesley's reply suggests that he perceives the "threat" to his well-being as an indirect result of " the emotional stress that has come with this issue." Plaintiff's Reply, p.11.

9